1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

PAMELA JEAN BRYANT,

               Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

               Defendant.

CASE NO. 13-cv-05327 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17

18

19

20

21

22

23

24

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 7). Plaintiff has filed an Opening Brief and defendant

has filed a Response (*see* ECF Nos. 18, 21).

      After considering and reviewing the record, the Court concludes that the ALJ's

failure to credit fully plaintiff's complaints and credibility, including her allegations of

fibromyalgia, is supported by substantial evidence in the records as a whole. The ALJ's finding that plaintiff over-reported her symptoms also is supported by substantial evidence. Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, PAMELA JEAN BRYANT, was born in 1961 and was 47 years old on the alleged date of disability onset of March 13, 2008 (*see* Tr. 115-2). Plaintiff finished high school, completed one year of college and completed management training with the McDonald's Corporation (Tr. 139).   Plaintiff has worked as a bill collector, a bakery worker and a fast food restaurant manager (Tr. 563).

Plaintiff has at least the severe impairments of "lumbar and cervical degenerative disc disease, degenerative joint disease of the knees, carpal tunnel syndrome, asthma, obesity, depression, a pain disorder, pancreatitis with occasional acute exacerbations, and tobacco abuse (20 CFR 404.1520(c))" (Tr. 490).

At the time of the last hearing, plaintiff was living in her house with her oldest daughter, who helps with the rent (Tr. 550)

<u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act on March 20, 2008 (*see* Tr. 19, 115-21). The application was denied initially and following reconsideration in 2008 (Tr. 19, 65-75, 76-77). Plaintiff's January, 2009 request for a hearing was granted, and her hearing was held on February 26, 2010 (Tr. 19, 34-62).  On April 1, 2010, the

Administrative Law Judge issued a decision concluding that plaintiff was not disabled (Tr. 19-29) and plaintiff's request for review by the Appeals Council was denied (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff appealed the decision to the United States District Court and Magistrate Judge Mary Alice Theiler remanded this matter to the Administration for a new hearing (Tr. 590, 598-615).  Plaintiff's second hearing was held before Administrative Law Judge Paul G. Robeck ("the ALJ") on January 8, 2013 (*see* Tr. 546-71).

On February 13, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 488-500). Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in late April, 2013 (*see* ECF Nos. 1, 3: *see also* Tr. 1-5). Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 3, 2013 (*see* ECF Nos. 13, 14, 15, 16).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred by finding that plaintiff's fibromyalgia was not a severe impairment; (2) Whether or not the ALJ erred by not complying with SSR 96-8p when assessing the plaintiff's RFC; (3) Whether or not the ALJ erred by posing hypotheticals to the VE that did not incorporate all of the plaintiff's severe impairments; (4) Whether or not the ALJ erred by finding the plaintiff not credible pursuant to SSR 96-7p; and (5) Whether or not the ALJ erred by not properly assessing plaintiff's pain (*see* ECF No. 18, p.2).

1

### STANDARD OF REVIEW

2

Plaintiff bears the burden of proving disability within the meaning of the Social

3

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4

the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

5

*Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

6

engage in any substantial gainful activity" due to a physical or mental impairment "which

7

can be expected to result in death or which has lasted, or can be expected to last for a

8

continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

9

1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's

10

impairment(s) are of such severity that claimant is unable to do previous work, and

11

cannot, considering the claimant's age, education, and work experience, engage in any

12

other substantial gainful activity existing in the national economy. 42 U.S.C. §§

13

423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

14

1999).

15

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16

denial of social security benefits if the ALJ's findings are based on legal error or not

17

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20

such "'relevant evidence as a reasonable mind might accept as adequate to support a

21

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

22

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 4

substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

<u>DISCUSSION</u>

**(1)    The ALJ provided clear and convincing reasons for his failure to credit fully plaintiff's credibility and allegations and did not err when assessing plaintiff's allegations of pain.**

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F.

Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen, supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms based solely on a lack of objective

1   medical evidence to corroborate fully the alleged severity of pain. *Bunnell v. Sullivan*,

2   947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at

3   1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must

4   provide specific "clear and convincing" reasons for rejecting the claimant's testimony.

5   *Smolen, supra*, 80 F.3d at 1283-84 (*citing Dodrill, supra*, 12 F.3d at 917); *Reddick,*

6   *supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996);

7   *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

8          Here, plaintiff contends that the ALJ erred in reviewing plaintiff's credibility and

9   erred by failing to credit fully plaintiff's allegations of pain. However, as discussed

10  below, and based on the relevant record, the Court concludes that the ALJ offered clear

11  and convincing reasons for failing to credit fully plaintiff's allegations, including her

12  allegations of pain. The ALJ relied in part on plaintiff's over-reporting of symptoms and

13  a lack of support from the objective medical evidence.

14         The ALJ found that plaintiff "has a pattern of over-reporting her alleged

15  symptoms" (Tr. 494). A finding that plaintiff engages in exaggeration, if supported by

16  substantial evidence in the record, is a valid reason to fail to credit fully a claimant's

17  allegations. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the

18  ALJ supported this finding in part with citation to the observations and opinions of Dr.

19  Stephen Meharg, Ph.D. (*see* Tr. 494 (*citing* Tr. 365-71)).

20         Dr. Meharg examined and evaluated plaintiff in August, 2008 (*see* Tr. 365-71).

21  When taking plaintiff's history, Dr. Meharg indicated that plaintiff "suffers from vertigo

22  which she estimates occurs approximately four times per year and lasts in three-month

durations" (Tr. 366). Dr. Meharg noted that when she realized that her report indicates she suffers from vertigo all year long, she "clarified that the symptoms are in fact intermittent but also tend to persist for quite some time" (*see id.*).

Dr. Meharg administered the Pain Patient Profile (P3) to plaintiff, as well as the Structured Interview for Malingered Symptomatology ("SIMS") (*see* Tr. 367). Dr. Meharg opined that although plaintiff's P-3 clinical profile appeared valid, that she "clearly describes herself as being more depressed, anxious, and somatically preoccupied than patients with similar injuries and illnesses" (Tr. 368). Regarding the SIMS, Dr. Meharg explained that "[e]xtensive research with this measure indicates utilizing a Total score of 14 or greater for the detection of malingered responding" (*see id.*). Dr. Meharg also indicated that "[u]sing a more conservative cutting score of 16 enhances diagnostic accuracy, correctly identifying 90% of known malingerers and 98% of honest responders" (*see* Tr. 368-69).

Regarding plaintiff's SIMS testing results, Dr. Meharg indicated that plaintiff received a sub-score of 15 in the index of pseudoneurologic symptoms, and he opined that this "raw score of 15 on this measure alone is remarkable especially given the fact that honest individuals with neurologic disease rarely endorse more than two of such items" (*see* Tr. 369). Regarding plaintiff's total score of 40, Dr. Meharg opined as follows:

> This is an extreme score that obviously exceeds the general
> recommendations in terms of the detection of malingered symptoms
> reporting. Although somewhat inconsistent with the Validity index from
> the P-3, there are few plausible explanations for these data other than to

presume [plaintiff] approached the SIMS with the active intent of
endorsing an unusually broad range of unusual and severe symptoms.

(Tr. 369). Dr. Meharg also indicated that plaintiff's "reports of extreme constant pain and

utter dejection were inconsistent with behavioral observations in the interview" (Tr. 370).

Dr. Meharg noted his observations that plaintiff "actually displayed little or no overt pain

behavior and presented in the appointment as bright, jovial, and well-coifed" (*see id.*).

　　　The ALJ does not indicate the specific weight given to Dr. Meharg's report,

however, the Court notes that at most, this is harmless error. Dr. Meharg's report does not

demand a more limited RFC than found by the ALJ. The ALJ discussed Dr. Meharg's

examination report and included the following in his written decision:

> According to Dr. M[e]harg's report, the claimant generated a Pain
> Profile (P3) that was apparently valid. He stated that she "clearly
> describes herself as being more depressed, anxious and somatically
> preoccupied than patients with similar injuries and illnesses."
> Additionally, her performance on the Structured Interview for
> Malingered Symptomatology (SIMS) generated "an extreme score that
> obviously exceeds the general recommendations in terms of the detection
> of malingered symptoms reporting." According to Dr. M[e]harg, the
> symptoms endorsed by the claimant were "bizarre," "unusual, and even
> contradictory." He added that her presentation during the interview was
> inconsistent with her allegations, because she exhibited little or no overt
> pain behavior, and she was also "bright, jovial, and well-coifed."

(Tr. 494).

　　　The ALJ found that despite the fact that Dr. Meharg did not diagnose plaintiff with

malingering or somatization disorder, "the longitudinal record nevertheless includes

evidence that leads one to believe she has a pattern of over-reporting her alleged

symptoms" (*id.*).

The Court notes that an ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane, supra*, 457 F.2d 758; *Wade, supra*, 509 F. Supp. at 20). The examination record of Dr. Meharg supports the finding by the ALJ of over-reporting of symptoms by plaintiff.

The Court also notes that the ALJ cited additional evidence supporting his finding regarding over-reporting of symptoms, including plaintiff's presentation at the emergency room with complaints of abdominal pain at a level of seven out of ten, despite the observations of Dr. Anthony Duy-Anh Tran, M.D., that plaintiff was eating, had an unremarkable examination, and had normal lab results (*see* Tr. 494 (*citing* Exhibit 43F/11-14, *i.e.*, Tr. 2047-50)). The ALJ noted the doctor's indications that "'there were no signs concerning for an (sic) acute pancreatitis,'" and that plaintiff was discharged from the ER (*id.*). The ALJ also noted further indications of normal test results regarding these particular allegations of plaintiff (*see* Tr. 495).

Although plaintiff contends that the "ALJ does not point to specific examples in the record that refutes the plaintiff's allegations regarding the intensity of her complaints," the Court concludes that the ALJ's finding that plaintiff "has a pattern of over-reporting her alleged symptoms," is supported by specific and substantial evidence in the record, including observations and opinions of Drs. Meharg and Duy-Anh Tran (*see* Tr. 494; *see also* Opening Brief, ECF No. 18, p. 16). The Court also notes that Dr. Meharg's opinion also supports the finding by the ALJ, discussed next, that plaintiff's subjective complaints and allegations are inconsistent with the objective medical evidence.

1    When failing to credit fully plaintiff's allegations, the ALJ also relied on a lack of

2    support from and inconsistency with the objective medical evidence. The ALJ included

3    the following discussion in his written decision:

> The record includes a recent note from Krishnavel V. Chathadi, M.D.,
> dated in January 2013. (internal citation to Exhibit 45F). He was aware
> of prior MRCP studies performed five months earlier that showed no
> pancreatic or biliary dilation, and no pancreatic parenchymal
> abnormalities were noted. In August 2012, Dr. Chathadi performed an
> endoscopic ultrasound, and overall he observed "no features of chronic
> pancreatitis" and two "benign-appearing" lymph nodes in the peri-
> pancreatic head region. Based on the findings, he recommended that the
> claimant return to her primary care provider and have a repeat MRI in
> three months to assess for any interval changes, which he believed would
> be "of low likelihood." Thereafter, he noted that she sought emergency
> department twice in December 2012 for complaints of abdominal pain, at
> which time she was started on Dicyclomine. She reported currently being
> asymptomatic, and she told Dr. Chathadi she believed the recent
> prescription "has made a tremendous difference." She also denied weight
> loss, gastrointestinal bleeding, or other concerns. For treatment, Dr.
> Chathadi and the claimant decided she would follow up on an as-needed
> basis.

(Tr. 495).

    The report of Dr. Chathadi supports the ALJ's finding of a lack of objective

medical support for plaintiff's complaints and allegations. The ALJ also relied on the

report from Dr. Robert Peterson, M.D. when finding that plaintiff over-reported her

symptoms and that there was a lack of objective medical support for her complaints and

allegations (*see* Tr. 496-97). Dr. Peterson opined that there was nothing to indicate a need

for further imaging of plaintiff's axial spine (*see* Tr. 790). He indicated that he could

make further assessment following receipt of all of the labs and records, but that

"basically this woman needs to quit smoking, lose weight and stop using opioid

medications for her arthritic complaints" (*see id.*). This report, too, supports the ALJ's

finding regarding the objective medical evidence. Similar to Dr. Peterson's opinion, the

Court notes the ALJ's reliance on the opinion of Dr. Paul Voeller, M.D. that

"'**abandoning the use of inappropriate narcotic analgesic [medications] and weight

loss would do more to help her medical condition than anything else**" (Tr. 497 (*citing*

Tr. 917)) (emphasis in original).

Based on the relevant record, the Court concludes that the ALJ's finding that

plaintiff's allegations and complaints were inconsistent with and unsupported by the

objective medical evidence is supported by substantial evidence in the record as a whole.

The ALJ's findings of over-reporting of symptoms and inconsistency with the

objective medical evidence provide clear and convincing reasons for failing to credit fully

plaintiff's allegations. Although the ALJ may have erred in reliance on a lack of medical

care, for example, the other reasons provided by the ALJ constitute clear and convincing

reasons for the ALJ's credibility determination, and any such errors in the credibility

analysis are harmless errors.

The Ninth Circuit has "recognized that harmless error principles apply in the

Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of

these principles. *Id.* (collecting cases). The court noted that "several of our cases have

held that an ALJ's error was harmless where the ALJ provided one or more invalid

reasons for disbelieving a claimant's testimony, but also provided valid reasons that were

1  supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each

2  case we look at the record as a whole to determine [if] the error alters the outcome of the

3  case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle

4  that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

5  determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,

6  1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow

7  the rule that courts must review cases "'without regard to errors' that do not affect the

8  parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407

9  (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

10

11      Plaintiff also complains that the ALJ erred by not changing plaintiff's RFC even

12  though the ALJ was ordered to reassess plaintiff's credibility and the medical evidence,

13  and to determine a new RFC. However, the ALJ was required to reassess the evidence,

14  not necessarily to make a different determination or ultimate conclusion based on the

15  assessment. The Court did not direct that plaintiff should be found credible or that any

16  particular medical opinion should be credited in full.

17      The Court concludes that the ALJ did not commit harmful error when evaluating

18  plaintiff's credibility or her allegations of pain.

19
       **(2)      Whether or not the ALJ erred by finding that plaintiff's fibromyalgia
20               was not a severe impairment.**

21      Although plaintiff contends that the ALJ erred by failing to find at step two that

22  fibromyalgia is a severe impairment, any error is harmless unless plaintiff demonstrates

23  that such error affected a subsequent step in the sequential disability evaluation process

24

1    *See Molina*, *supra*, 674 F.3d at 1115. The step-two determination of whether or not a

2    severe impairment exists is merely a threshold determination, raising potentially only a

3    "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)

4    (*citing Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). More importantly, the

5    Court finds no error in the ALJ's evaluation of plaintiff's fibromyalgia, as discussed

6    below.

7          Plaintiff's support for fibromyalgia-related limitations largely includes nothing

8    more than an alleged diagnosis and plaintiff's subjective reports (*see* Opening Brief, ECF

9    No. 18, pp. 6-8). The Court already has upheld the ALJ's determination regarding

10   plaintiff's credibility, *see supra*, section 1. The Court also notes plaintiff's contention that

11   the ALJ dismissed her claims of fibromyalgia improperly based on Dr. Voeller's

12   examination and the ALJ's characterization of his observation as minimal tenderness (*see*

13   Opening Brief, ECF No. 18, p. 6). However, the Court also notes that plaintiff admits that

14   Dr. Voeller's examination notes include his observation of "No tenderness on palpation

15   of any of the '18 classic points' associated with 'fibromyalgia'" (*see id.*; Tr. 917).

16   Although plaintiff argues that other criteria can be utilized to support a diagnosis of

17   fibromyalgia, plaintiff does not reply to defendant's argument that no diagnosis of

18   fibromyalgia has been made by an acceptable medical source using any criteria (*see*

19   Response, ECF No. 21, pp. 5-8).

20         Regarding plaintiff's allegation of a diagnosis, the Court notes the following

21   persuasive arguments of defendant:

22

23

24   ORDER ON PLAINTIFF'S COMPLAINT - 14

1

[The] ALJ properly excluded fibromyalgia from consideration because it
was not a medically determinable impairment . . . . In fibromyalgia,

2

"We cannot rely upon the physician's diagnosis alone. The evidence
must document that the physician reviewed the person's medical history

3

and conducted a physical exam." . . .

4

Although plaintiff's treatment providers have repeatedly used
diagnostic code "729.1, myalgia and myositis NOS," Plaintiff incorrectly

5

conflates this with a diagnosis of fibromyalgia. The [CDC website
indicates]: "There is no specific single [diagnostic] code for

6

fibromyalgia. According to the coding rules, fibromyalgia is coded to
729.1 which is labeled 'Myositis and Myalgia, unspecified' and can

7

include other conditions." (internal citation to
http://www.cdc.gov/arthritis/basics/fibromyalgia.htm, last visited March

8

30, 2014). Therefore, Plaintiff's attempt to conflate the use of diagnostic
code 729.1 with an actual diagnosis of fibromyalgia is incorrect. Myalgia

9

and myositis are terms for general muscle aches, pains, or inflammation
(internal citation omitted). . . . .

10

11

The only acceptable medical source to mention fibromyalgia was
Mark Ensminger, M.D. (internal citation to Tr. 2057-58). However, Dr.

12

Ensminger merely included fibromyalgia on a list of Plaintiff's medical
conditions when he saw Plaintiff for abdominal pain (internal citation to

13

Tr. 2057-58). Dr. Ensminger did not discuss the diagnosis at all or
explain the basis for the assessment (internal citation to Tr. 2057-58) In

14

fact, Dr. Ensminger's examination results indicate that Plaintiff was in
"no acute distress" and did not have any abnormalities, except some

15

unspecified arthritic changes in her extremities (internal citation to Tr.
2057). This does not satisfy the Commissioner's requirement that a

16

diagnosis of fibromyalgia be made by an acceptable medical source who
premised the diagnosis on examination results and a review of the

17

relevant medical history (internal citation to SSR 12-2p).

18

(*Id.* (*citing* Tr. 494-95; Social Security Ruling, SSR 12-2p, available at 2012 SSR LEXIS

19

1, at *3, 2012 WL 3017612;)).

20

21

Plaintiff has not replied to these arguments of defendant, and as noted, the Court

22

finds them to be persuasive. The ALJ's failure to find fibromyalgia to be a severe

23

impairment is supported by substantial evidence in the record as a whole.

24

**(3)      Whether or not the ALJ erred by not complying with SSR 96-8p when assessing the plaintiff's RFC.**

If the ALJ cannot determine whether or not a claimant is disabled based on a claimant's current work activity or on medical factors alone and a claimant has a severe impairment, a review is made of the claimant's residual functional capacity ("RFC"). *See* Social Security Ruling "SSR" 96-8p, 1996 SSR LEXIS 5 at *3-*4. As noted by the Ninth Circuit, "Social Security Regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)) (*quoting* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added by Ninth Circuit); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. Residual functional capacity is the most a claimant can do despite existing limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

Plaintiff contends error in the RFC and notes that the ALJ did not indicate if he rejected or accepted the opinion of Dr. Meharg, however plaintiff does not reply to defendant's argument that "any error the ALJ may have committed by not explicitly assigning a weight to Dr. Meharg's opinion is harmless" (*see* Response, ECF No. 21, p. 19). Defendant contends any error is harmless because the ALJ "discussed Dr. Meharg's opinion in some detail [and] found "pain disorder" and "depression" to be severe impairments, which are the only two impairments diagnosed by Dr. Meharg (*id.*, pp. 19-20 (internal citations to Tr. 371, 490, 491)). Defendant also argues that there are "no specific limitations opined by Dr. Meharg that are inconsistent with the ALJ's findings,"

1    and because plaintiff "cannot identify any actual inconsistencies between Dr. Meharg's

2    opinion and the ALJ's findings, Plaintiff has not shown harmful error" (*id.*, p. 20 (*citing*

3    Tr. 371; *Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989))).

4          Based on the relevant record, and the persuasive argument of defendant, the Court

5    concludes that the ALJ committed harmless error in not specifying weight given to the

6    opinion of Dr. Meharg.

7          Although plaintiff contends error on the basis of Dr. Horton's opinion, defendant's

8    response that plaintiff "has not challenged, or even acknowledged, the ALJ's reasons for

9

10   rejecting Dr. Horton's opinion," remains unchallenged (*see* Response, ECF No. 21, p 19).

11         The ALJ discussed Dr. Horton's opinion, but gave it limited weight (*see* Tr. 498).

12   Not only did the ALJ ultimately conclude that Dr. Horton's opinion was not supported by

13   the longitudinal record and was inconsistent with other medical opinions awarded

14   significant weight, as noted by plaintiff, but also, the ALJ relied on the fact that Dr.

15   Horton's report "does not include a discussion of the claimant's continued opioid use and

16   how it may affect her mood symptoms" (*see* Tr. 498). The ALJ indicated that "both Drs.

17   Peterson and Voeller strongly recommended that the claimant cease, or at least reduce,

18   her significant medication use" (*see id.*). In addition, the ALJ relied on a finding that

19

20   "neither of Dr. Horton's reports includes objective testing, such as the SIMS, P3, or the

21   Minnesota Multiphasic Personality Inventory-2 (MMPI-2), which could be used to assess

22   the claimant's allegations" (*see id.*). Plaintiff has failed to cite or address these reasons

23   provided by the ALJ.

24

1    In support of her argument regarding deficiencies in the ALJ's RFC determination,

2    plaintiff also implies error in the ALJ's reliance on the opinion from a non-examining

3    source, Dr. Diane Fligstein, Ph.D., however, an ALJ may give more weight to non-

4    examining medical source opinions that are contradicted, over the opinions of treating or

5    examining sources, when the ALJ provides specific and legitimate reasons for doing so

6    that are supported by substantial evidence in the record. *See Van Nguyen v. Chater*, 100

7    F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831). The ALJ can

8    provide specific and legitimate reasons for failing to credit fully medical opinions by

9    "setting out a detailed and thorough summary of the facts and conflicting clinical

10   evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

11   F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

12   1989)). That is what the ALJ did here.

13

14   Although plaintiff contends that the ALJ erred in his RFC determination by failing

15   to incorporate limitations arising from fibromyalgia, and by failing to accommodate fully

16   plaintiff's complaints, these allegations have been discussed already, *see supra*, sections

17   1 and 2.

18           **(4)    Whether or not the ALJ erred by posing hypotheticals to the VE that
19                    did not incorporate all of the plaintiff's severe impairments.**

20   Similarly, plaintiff's argument regarding the hypotheticals largely involves

21   allegations of an improper assessment of plaintiff's fibromyalgia or her other allegations

22   and testimony (*see* Opening Brief, ECF No. 18, pp. 11-12). Plaintiff additionally cites a

23   treatment record from October 3, 2012 to support this argument regarding the

24

1    hypotheticals presented to the vocational expert (VE); however, this treatment record

2    includes the following:

3         I did discuss the disabled parking permit with the patient and we decide
          not to do it. She needs to park in the normal parking and walk, even if it
4         takes her a little while and even if she has to walk long periods, she does
          not need disabled parking, and she agrees.
5

6    (Tr. 2069).

7         For the reasons stated, and based on the relevant record, the Court concludes that

8    the ALJ did not err in his hypotheticals presented to the VE.

9                                    CONCLUSION

10        Based on the stated reasons and the relevant record, the Court **ORDERS** that this

11   matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

12        **JUDGMENT** should be for defendant and the case should be closed.

13   Dated this 31st day of March, 2014.

14

15

16   J. Richard Creatura
     United States Magistrate Judge

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 19